# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| SHELIA HEMPHILL, as personal representative of the estate of AMANDA JEAN HALL, <br><br> Plaintiff, <br><br> v. <br><br> MORGAN COUNTY, ALABAMA, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) <br> Civil Action Number <br> **5:21-cv-01286-AKK** |

## **MEMORANDUM OPINION**

Tragically, Amanda Jean Hall died while she was detained at the Morgan County Jail. Shelia Hemphill, Hall's mother and the personal representative of her estate, now brings this suit against Morgan County, Sheriff Ron W. Puckett, and Quality Correctional Healthcare, Inc., alleging that the defendants violated Hall's rights under both the Constitution and Alabama law. The defendants move to dismiss for failure to state a claim upon which relief can be granted. Docs. 6, 8, 20. For the reasons that follow, Morgan County and Sheriff Puckett's motions are due to be granted, and QCHC's motion is due to be denied.

I.

In the early morning hours of September 27, 2019, law enforcement arrested Hall near her home for public intoxication and transported her to the Morgan County Jail. Doc. 1 at 4. Hemphill received several calls from the jail, presumably from Hall, but "was unable to speak to the caller due to problems with the audio on the jail's phone." *Id*. Hemphill went to the jail later that day but "was denied the ability to see her daughter." *Id*.

The next morning, jail staff found Hall unresponsive in her cell. *Id*. Hall was transported to a hospital, but "[d]espite the efforts of the physicians . . . Hall's condition continued to deteriorate until she passed away." *Id*. An autopsy determined that the cause of Hall's death was sepsis associated with aspiration pneumonia. *Id*. at 5. Hemphill alleges that "jail personnel repeatedly and callously denied [Hall] the right to medical treatment of any sort, refusing to even see her and attempt a diagnosis," and she claims that had Hall "been given even rudimentary medical treatment when she presented to the jail medical center, her condition would not have progressed to fatality." *Id*.

II.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require plaintiffs to plead "detailed factual allegations" fully outlining the merits of their

case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it does demand more than "unadorned" accusations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice, *id*.; *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012), and to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (internal citations omitted).  In other words, construing the allegations in the light most favorable to the plaintiffs, the complaint "must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

### III.

Hemphill brings three claims: (1) deliberate indifference to Hall's serious medical needs, in violation of the Fourteenth Amendment, against Morgan County and Sheriff Puckett; (2) negligence and wrongful death, in violation of Alabama law, against all three defendants;[1] and (3) negligent hiring, training, supervision, and/or

---

[1] Hemphill pleads that "[t]his claim is asserted against QCHC [] under State Law, and against the County and Puckett, both officially and individually under Federal Law." Doc. 1 at 6-7. The court discerns no basis for a "negligence and wrongful death" claim under federal law, and Hemphill provides no statutory or common law foundation for this purportedly federal claim. Accordingly, the court will treat Count II as a state-law claim against all three defendants, and to the extent Hemphill pleads negligence and wrongful death claims under federal law in Count II, those claims are due to be dismissed.

retention against Morgan County and Sheriff Puckett.[2]  Doc. 1 at 5-9.  The defendants move to dismiss all claims for failure to state a plausible basis for relief.  *See* docs. 6, 8, 20.  The court will address the claims against each defendant in turn.

### A.

Hemphill's claims against Morgan County, brought pursuant to 42 U.S.C. § 1983, relate to (1) the allegedly unconstitutional actions of jail staff, who are allegedly agents of Morgan County, (2) an alleged policy or custom maintained by Morgan County of denying medical care to detainees at the jail, and (3) purported negligence in hiring, training, and supervising jail staff.  *See* doc. 1 at 5-9.

### 1.

A county can be held liable under § 1983 "only for acts for which it is actually responsible."  *Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (quoting *Pembaur v. City of Cincinatti*, 475 U.S. 469, 479-80 (1986)).  Relevant here, Alabama counties "have no responsibility for daily operation of county jails and no authority to dictate how jails are run."  *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001).  Rather, a county's responsibilities "relate only to maintaining the jail's physical plant and providing operational funding."  *Turquitt*,

---

[2] Hemphill does not clarify whether she pleads this count under state or federal law, and she provides no legal basis for this claim.  The court reads this allegation as a § 1983 failure to train claim brought pursuant to *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), and its progeny, and will therefore analyze it as such.  To the extent Hemphill intends to bring a state law tort claim against Sheriff Puckett and Morgan County in this count, it is subject to dismissal for the reasons outlined below, *see infra* Sections III.A, III.B.2.

137 F.3d at 1291. Alabama sheriffs – not counties – are responsible for the management of county jails, and, importantly, "they are not subject to county oversight in their performance of this responsibility." *Id.* (citing Ala. Code § 14-6-1; *King v. Colbert Cty.*, 620 So. 2d 623, 625 (Ala. 1993)). Thus, a county is not liable for a sheriff's actions or omissions in relation to the day-to-day management of a county jail. *See id*. at 1287-93; *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785-93 (1997).

## 2.

Hemphill's claims against Morgan County are based on the jail's staffing policies, its procedures for providing medical treatment, and its staff's alleged deliberate indifference to Hall's medical needs. Hemphill argues that "[i]t is unclear whether [] Sheriff Ron Puckett, Morgan County, or QCHC [] is responsible for developing" the allegedly unconstitutional policies and procedures. Doc. 13 at 13-15. Hemphill asserts that the court should thus allow her claims against Morgan County to proceed to discovery for her to ascertain whether Morgan County itself promulgated these policies. *Id*. But this contention overlooks that managerial responsibilities at the jail are delegated exclusively to Morgan County's sheriff by

Alabama law.³   Hemphill's claims against the County are therefore due to be dismissed.

## B.

Hemphill brings her deliberate indifference, negligence and wrongful death, and negligent hiring, training, supervision, and/or retention claims against Sheriff Puckett in both his individual and official capacities.  Doc. 1 at 5-9.

### 1.

Suits against state officials in their official capacity are considered suits against the state itself, and the Eleventh Amendment bars citizens of a state from suing that state for money damages. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 (1984)).  And "[i]t is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment."  *Melton v. Abston*, 841 F.3d 1207, 1234 (11th Cir. 2016).  Accordingly, the claims against Sheriff Puckett in his official capacity are due to be dismissed.

---

³ To be sure, a county may be held liable for failing to fulfill one of its enumerated duties – such as providing an adequate jail facility, *see Marsh*, 268 F.3d at 1027-28, or providing sufficient operational funding for medical care, *see Shaw v. Coosa Cty. Comm'n*, 330 F. Supp. 2d 1285, 1288-89 (M.D. Ala. 2004); *Gaines v. Choctaw Cty. Comm'n*, 242 F. Supp. 2d 1153, 1161 (S.D. Ala. 2003) – but Hemphill makes no such claims here.

**2.**

Similarly, a state-law suit against an Alabama sheriff in his individual capacity is "essentially a suit against the state," and under Alabama law, the state of Alabama is immune from suits for damages. *Parker v. Amerson*, 519 So. 2d 442, 445-46 (Ala. 1987) (citing Ala. Const., art. I, § 14; *Montiel v. Holcombe*, 199 So. 245 (1940)). Alabama sheriffs are therefore entitled to absolute immunity from state-law tort claims seeking damages. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); *Parker*, 519 So. 2d at 445-46.

**3.**

Left standing are Hemphill's deliberate indifference and failure to train claims against Sheriff Puckett in his individual capacity under § 1983. Sheriff Puckett contends that Hemphill has failed to allege a constitutional violation and that he is therefore entitled to qualified immunity. *See* doc. 9 at 7-14. The court agrees.

**a.**

To establish a claim under § 1983, a plaintiff must allege facts showing: "(1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law." *Melton*, 841 F.3d at 1220. A heightened pleading standard applies to § 1983 claims within the Eleventh Circuit where a defendant raises a qualified immunity defense. *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010). Under this standard, a plaintiff must

allege facts with "sufficient detail for [the d]efendants to understand what alleged rights were violated . . . and which of their actions allegedly violated those rights." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). Such factual content is necessary to allow the court to conduct a two-step analysis of the defendant's qualified immunity defense – i.e. "to determine [1] whether [the plaintiff's] facts indeed set out a violation of rights and [2] whether those rights were clearly established when these incidents occurred." *Harper*, 592 F.3d at 1233 (citing *Amnesty Int'l*, 559 F.3d at 1180). And where, as here, the parties agree that the defendant was acting within his discretionary authority, *see* docs. 9 at 9-11; 13 at 7, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Thus, if the plaintiff fails to show either a constitutional violation or that the allegedly violated right was clearly established, her claim is subject to dismissal on qualified immunity grounds. *Melton*, 841 F.3d at 1221.

### b.

A state official violates the Fourteenth Amendment when he acts with deliberate indifference to a detainee's serious medical need. *Harper*, 592 F.3d at 1234. To state a deliberate indifference claim based on supervisory liability,[4] and

---

[4] Because Hemphill does not allege that Sheriff Puckett personally participated in the allegedly unconstitutional denial of medical care, *see* doc. 1 at 3-6, the court analyzes her claims under the standard for supervisory liability.

thus to meet the "constitutional violation" part of the test to overcome qualified immunity, a plaintiff must plead facts showing a causal relationship between the defendant's actions and the alleged denial of medical care. *Id*. at 1236. There are three ways for a plaintiff to do so: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so;" (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights;" or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id*. (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003)). If a plaintiff fails to plead sufficient factual content to show causality in any of these three ways, her complaint fails to state a claim for deliberate indifference. *See id*. at 1235-37.

    Here, Hemphill does not allege a "widespread history of abuse" that would have placed Sheriff Puckett on notice of the allegedly deficient medical care, nor does she plead facts suggesting that Sheriff Puckett directed jail staff to deny medical care or that he knew of the impending deprivation of medical care and failed to stop it. Even read most favorably to her, Hemphill's complaint does not include any facts establishing the existence of a custom or policy that resulted in the deliberate indifference to Hall's Fourteenth Amendment rights. Instead, with regard to the

alleged deliberate indifference to Hall's serious medical needs, Hemphill pleads only the following:

> Upon information and belief, had Ms. Hall been given even rudimentary medical treatment when she presented to the jail medical center, her condition would not have progressed to fatality. Sadly however, jail personnel repeatedly and callously denied her the right to medical treatment of any sort, refusing to even see her and attempt a diagnosis.

Doc. 1 at 5. Hemphill pleads no factual content connecting Sheriff Puckett to the actions of "jail personnel," and her conclusory allegations[5] do not suffice to meet the pleading standard for alleging a constitutional violation under § 1983. *See Harper*, 593 F.3d at 1233; *Amnesty Int'l*, 559 F.3d at 1180. Accordingly, Sheriff Puckett is entitled to qualified immunity as to Hemphill's deliberate indifference claim.

### c.

A sheriff may be held liable under § 1983 for a failure to train his employees when that failure "amount[s] to deliberate indifference to the rights of persons with

---

[5] Hemphill's allegations as to this claim are comprised almost entirely of boilerplate language: "The conduct of Defendants jointly and severally caused and constituted a violation of the plaintiff's decedent's right to medical care under the Fourteenth Amendment to the United States Constitution. This conduct also constituted a deprivation of the plaintiff's decedent's rights and privileges as secured by the provisions of 42 USC § 1983. . . . The actions of the County and Puckett were performed under color of state law. The conduct of said defendants, jointly and severally, implements or executes a custom, policy, policy statement, ordinance, regulation and/or decision officially adopted, promulgated or followed by the officers, official policymakers and/or final decision makers of the Morgan County Jail. . . . Puckett and the County acted with deliberate indifference to Hall's serious medical condition."
Doc. 1 at 5-6.

10

whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1328-30 (11th Cir. 2015). Such claims are severely limited, however,[6] and "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Weiland*, 792 F.3d at 1328 (citing *Connick*, 563 U.S. at 62) (internal quotation marks omitted). And, relevant here, Hemphill does not allege any pattern of constitutional violations, nor does she provide any factual content to support her allegation that Sheriff Puckett breached his duty to train. In fact, Hemphill does not even attempt to defend this claim. *See generally* doc. 13.[7] Accordingly, Hemphill has failed to plead a constitutional violation, and Sheriff Puckett is entitled to qualified immunity as to Hemphill's failure to train claim.

\* \* \* \* \*

---

[6] *See Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion) (noting that "a 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*").

[7] Hemphill also passingly alleges that Sheriff Puckett breached his "duty to properly screen applicants to the Morgan County Sheriff's Department," doc. 1 at 7-8, but the court discerns no facts in her complaint that would support a failure to screen claim under *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997).

11

Hemphill has suffered an unimaginable loss, and – rightly so – she is searching for answers about her daughter's death. However, her conclusory allegations against Sheriff Puckett are insufficient to survive a motion to dismiss. And because Hemphill has failed to allege "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, her constitutional claims against Sheriff Puckett are due to be dismissed.

### C.

Hemphill also brings a negligence and wrongful death claim against QCHC, which contracts with Morgan County to provide health care services to detainees at the jail. Doc. 1 at 2, 6-7. Allegedly, QCHC "refused to see Hall, or to provide her with a diagnosis or treatment," thereby denying her medical care for a serious condition and ultimately causing her death. *Id*. at 6-7. QCHC argues that Hemphill's claim fails to comply with the relevant state-law pleading standards. *See* doc. 20.

### 1.

The Alabama Medical Liability Act governs negligence and wrongful death claims against healthcare providers. Ala. Code § 6-5-551. The AMLA requires plaintiffs to plead "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff[,] and shall include when feasible and ascertainable the date, time, and place of the act

or acts." *Id*. Otherwise, "[the complaint] is subject to dismissal for failure to state a claim upon which relief may be granted." *Id*. But, the AMLA does not require plaintiffs to plead "every element of the cause of action . . . with particularity." *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). Instead, a complaint suffices if it "give[s] the defendant health care provider fair notice of the allegedly negligent act and [] identif[ies] the time and place it occurred and the resulting harm." *Id*. So long as the complaint "affords the defendant health care provider fair notice of these essential elements, the courts should strive to find" that the complaint complies with the AMLA. *Id*.; *see also Taylor v. Starr*, No. 1:20-CV-00489-CLM, 2021 WL 1610671, at *4 (N.D. Ala. Apr. 26, 2021) ([T]he Alabama Supreme Court has not been exacting in analyzing complaints under [the pleading requirements of] § 6-5-551.").

Moreover, where the plaintiff alleges harm resulting from an omission or a failure to provide medical care, "allegations providing date, time, and place are not required." *Hobbs v. Powell*, 138 F. Supp. 3d 1328, 1343 (N.D. Ala. 2015). Rather, "the obligation [under the AMLA] to address time and location applies to acts, not omissions." *Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1189 (S.D. Ala. 2006). Therefore, a negligence and wrongful death claim alleging a failure to provide medical care satisfies the AMLA's pleading requirements as long as it specifies an approximate location and window when the alleged omission occurred. *See Taylor*,

2021 WL 1610671 at *4-5; *Hobbs*, 138 F. Supp. 3d at 1343; *Mikkelsen*, 619 So. 2d at 1384-85.

**2.**

Turning to the specifics here, QCHC argues that the complaint "does not set forth the specific breach of a national standard of care, who breached the standard of care, and specifically the time and place the alleged breach occurred." Doc. 24 at 7. This purported failure "makes it impossible to determine which QCHC employees are alleged to have committed medical malpractice." *Id*.

This framing of the AMLA's requirements, however, misstates the relevant precedent. To avoid dismissal, Hemphill must only give QCHC fair notice of the allegedly negligent failure to provide care, the approximate time and place of the omission, and the harm that Hall suffered as a result. Hemphill has done so; she alleges that Hall died less than thirty-six hours after her arrest for public intoxication because "jail personnel repeatedly and callously denied her the right to medical treatment of any sort, refusing to even see her and attempt a diagnosis." Doc. 1 at 4-5. Because Hemphill's complaint gives QCHC fair notice of her claim against it, and because QCHC can thus ascertain which of its employees were on duty at the time and which, if any, interacted with Hall, Hemphill's claim satisfies the pleading requirements. *See Taylor*, 2021 WL 1610671 at *4 (finding that the complaint met AMLA requirements where it "allege[d] that all these acts happened at the Calhoun

County Jail[, a]nd many of the [] allegations point[ed] to the proximate times when . . . the health care provider defendants should have provided [the decedent] with proper medical assessments and medical care").

### IV.

To close, Morgan County and Sheriff Puckett's motions to dismiss, docs. 6 and 8, are due to be granted. QCHC's motion to dismiss, doc. 20, is due to be denied. A separate order effectuating this opinion follows.

**DONE** the 25th day of March, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE